Shauck, J.
The act under whose favor these proceedings were had is as follows:
“Section 1. That where it becomes necessary, outside the corporate limits of a city or village, for the track of a steam, street, electric or interurban railroad company to cross the track of another steam, stree.t, electric or interurban railroad company, unless the manner of such crossing shall be agreed to between such companies, it shall be the duty of the court of common pleas of the county wherein such crossing is located, or a judge thereof in vacation, on application of either party, to ascertain and define by its decree the mode of such crossing which will inflict the least practical injury upon the rights of the company owning or operating the road which is intended to be crossed; andf if in the judgment of such court or such judge thereof, it is reasonable and practicable to avoid a grade crossing, it shall'by its process prevent a crossing at grade; but in determining the mode of such crossing, no grade shall be required to exceed the established maximum or ruling grade governing the operation by motive power of that division or part of the company on which the improvement is to be made, without the consent *149 of the company; nor shall either company’s tracks he required to be placed below high water mark.
“The court shall, in its order, equitably apportion the initial expense of such construction or crossing and the expense of maintenance thereof among the parties interested. Any party feeling itself aggrieved by the decision of said court shall have the right of appeal as in other civil cases.
“Section 2. Nothing in this act shall prevent any railroad company from laying additional tracks at existing crossings.”
The validity of the act is not questioned. Indeed, it is not left in doubt since the decision of this court in Lake Shore and Michigan Southern Ry. Co. v. The Cincinnati, S. & C. Ry. Co., 30 Ohio St., 604. It is an exercise of the police power of the state for the protection of the lives and limbs of those who operate trains and electric cars, and of those who travel upon them. A consideration of the interests of carrying companies may not have contributed to the passage of the act, but those interests are sufficiently guarded. The brief filed on behalf of the Pennsylvania Company is attractive because of its insistence that it and all other carriers shall be required to perform fully the enjoined duty to employes and to the public. In view of the longevity of corporations and the durability of bridges of modern construction, and the damages which result from the many collisions occurring at grade crossings, the attitude of that company may also be entirely consistent with the most comprehensive view of its own interests.
While the act is not, in all respects, so complete, or so clear, as to entitle it to be regarded as a *150 model for future legislation, the provisions involved in these cases are quite clear. The act plainly declares the policy of the state to be against crossings at grade. That conclusion necessarily results from the provision that the court shall prevent grade crossings whenever it is reasonable and practicable to do so. The court is expressly required to apportion ratably among the parties interested, both the costs of constructing the crossing and the expenses of maintaining it. In this respect it applies the principle of former legislation which was interpreted and approved in the case above referred to. We cannot say that the equitable apportionment of these costs and expenses must necessarily be their equal apportionment as was ordered in the present cases. But here was no evidence tending to show that their equal apportionment would be inequitable, and the court followed the natural presumption that the separation of the grades would result to the equal benefit of the parties interested, and that they should contribute equally to the accomplishment of the purposes for which the statute was enacted. In all respects which are material to any question here presented, the act is substantially the same as that enacted in the state of Pennsylvania in the year 1871. The act has been repeatedly construed and applied bj' the supreme court of that state consistently with its obvious purpose to put an end to grade crossings in the cases to which it applies. Indeed, the frequency with which that court has reiterated the same views can be explained only by the persistency of the courts of first instance in that state in finding that it was not practicable *151 to. avoid grade crossings, thus calling upon the supreme court to intervene to the end that the obvious purpose of the statute might be permanently realized, and that its provisions might not be evaded by artifice or by improper interpretation.
It is true that the legislature has not seen fit to authorize the intervention of the courts to determine the matter of crossings, except in cases where the companies are unable to agree with respect thereto, and counsel for The Toledo Terminal Company insist that the courts were with-, out jurisdiction in the case to which it is a party, because the inability of the companies to agree does not appear. The statute does not require a disagreement leading to violence. A sufficient disagreement appears in the briefs before us and in the divergent views respecting their rights which were presented in the courts below.
Counsel for The Toledo, Fostoria & Findlay Railway Company urge that the order of the circuit court in the case to which it is a party, is erroneous, because the company had a right to locate its road in the highway with the consent of the commissioners of the county, that the court could not order an overhead crossing in the highway where, according to its own finding, it would be a source of interruption to public travel, and that the court was without power to change the place of crossing. ' Paraphrased, the proposition seems to be, that the junior company may defeat the operation of the statute by voluntarily choosing a place of crossing at which it will not be practicable to separate the grades. The circuit court» *152 very properly concluded that the conditions which would forbid an overhead crossing must not be voluntarily chosen by the company, and it enjoiried' the crossing at grade, because practical opportunities for an overhead crossing were at hand. The point was so disposed of in the Perry Co. Railroad Extension Company v. The N. & S. Valley Railroad Company, 150 Pa. St., 194.
Though we are not charged with the duty of weighing conflicting evidence for the purpose of determining its weight, we have examined the records in these cases to see that the proceedings of the circuit courts are in accordance with the provisions and purpose of the statute, that their findings of fact are sustained by substantial evidence, and that they support the orders which the courts made.

Judgments affirmed.

Price, C. J., Crew, Summers, Spear and Davis, JJ., concur.